IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CR-246-1FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| SHERMAN CARNELL GAY, ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #20], the matter having been referred to the undersigned for memorandum and recommendation by United States District Judge Louise W. Flanagan. The Government has filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on April 16, 2014, at which the Government and Defendant, with counsel, appeared.

## STATEMENT OF THE CASE

On October 22, 2014, a federal grand jury returned a one-count indictment charging Sherman Carnell Gay ("Defendant") with possession with intent to distribute a quantity of cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1). On February 17, 2015, Defendant filed the motion presently before the court in which Defendant seeks to suppress all evidence against him and requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant contends that the evidence was obtained pursuant to a search warrant that was based upon material misrepresentations and omissions made by law enforcement officers and is, therefore, fruit of an unconstitutional search. The Government filed a response in opposition,

asking the court to deny Defendant's motion without a hearing. In order to assist the court in its resolution of Defendant's motion, the undersigned held an evidentiary hearing in the matter.

## STATEMENT OF THE FACTS

**I.   Background**

On August 1, 2014, officers with the Raleigh Police Department Career Criminal Unit seized a number of items, including 203 grams of cocaine, approximately eleven grams of marijuana, two firearms, digital scales, plastic bags, razor blades, rubber bands, five cell phones, mail addressed to Sherman Gay, and $299 in United States currency, from a residence located at 3004 Haven Road, Raleigh, North Carolina, pursuant to a warrant issued by a Wake County magistrate. In support of the warrant application, Officer Trybulski had submitted an affidavit attesting to the following facts:

> On 7/2/14 Officer Trybulski and Officer Wilkins received information from a cooperating defendant (CD) that Sherman Gay is trafficking in cocaine in the area of Raleigh, NC. The CD stated that Gay is buying approximately 1 to 2 kilos of cocaine a month from an unknown source in Selma, NC. The CD stated Gay resides in Clayton, NC (identified as 22 Buckhorn Lane, Clayton, NC 27527) but stores his cocaine at a "stash house" in Raleigh, NC. The CD stated that Gay is currently storing his cocaine at Cheryl Evans house. Cheryl Evans resides at 3004 Haven Rd Raleigh, NC 27610. While conducting surveillance Gay has been seen coming and going from 3004 Haven Rd Raleigh, NC on numerous occasions.
>
> On 7/25/14 Officer Trybulski and Officer Wilkins conducted a trash pull at 3004 Haven Rd Raleigh, NC. The trash was placed on the curb in a City of Raleigh trash can on the regular scheduled pick up date. Officers located a marijuana roach and mail addressed to Cheryl Evans at 3004 Haven Rd Raleigh, NC.
>
> On 8/1/14 Officer Trybulski, Officer Wilkins, and Sgt. Hodge conducted a trash pull at 3004 Haven Rd Raleigh, NC. The trash was placed on the curb in a City of Raleigh trash can on the regular scheduled pick up date. Officers located a marijuana roach, four plastic baggies with cut corners, and mail addressed to Cheryl Evans at 3004 Haven Rd Raleigh, NC.

(Search Warrant Aff., Gov't Hr'g Ex. 3 at 5.)

2

Following the search of 3004 Haven Road, investigating officers obtained a second search warrant for Defendant's home in Clayton, North Carolina. A search of that residence revealed digital scales with drug residue on them, documents in Defendant's name, and a Mercedes Benz 500C.

**II.     Hearing Testimony**

At the hearing of this matter, Defendant presented the testimony of Cheryl Evans; and the government presented the testimony of Officer Mike Trybulski, Officer Joel Wilkins and Sergeant Jason Hodge, law enforcement officers with the Raleigh Police Department. All witnesses were sequestered throughout the hearing. A summary of their testimony follows. Also admitted into evidence were a number of exhibits offered by Defendant and the government. (*See* Ex. List [DE #26].)

**A.     Cheryl Evans (Tr. 7-53)** [1]

Cheryl Evans is Defendant's girlfriend and resides at 3004 Haven Road in Raleigh with her two sons, ages seven and fourteen. Ms. Evans' fourteen-year-old son has cerebral palsy and requires round-the-clock care. Ms. Evans receives assistance from two home-care aides. Defendant and Ms. Evans began dating around December 2013. At some point, the two began having "disagreements." Defendant stopped staying overnight at Ms. Evans' home but continued to come to the house on a daily basis. In or around July 2014, Ms. Evans asked Defendant to remove his belongings from her home, which he was supposed to have done on August 1, 2014.

Ms. Evans has two trash receptacles issued by the City of Raleigh, which she uses to discard of household refuse. The trash receptacles are normally kept in the side yard area of the

---

[1] Transcript references are to the evidentiary hearing conducted on April 16, 2015. (*See* Mot. Suppress Hr'g Tr. [DE #27].)

residence, near the carport and approximately three or four feet from the back door to the sunroom. Due to her son's condition, the trash receptacles contain a large quantity of soiled diapers and empty Pediasure® cans. Ms. Evans' home is on the City of Raleigh's Friday trash route, and Ms. Evans places the trash receptacles on the grassy area near the curb of her street prior to the designated pickup time on Friday.

As a result of the investigation and search of 3004 Haven Road, Ms. Evans was charged and, in February 2015, adjudicated guilty on state charges of maintaining a dwelling for the use, manufacture or distribution of controlled substances. On the same date, she pled guilty to illegal possession or use of food stamps, two counts of obtaining property by false pretenses and conspiracy to obtain property by false pretenses. Ms. Evans entered into a deferred prosecution agreement under the state's felony diversion program but was subsequently terminated from the program after submitting falsified records concerning her community service requirement.[2]

### B. Officer Mike Trybulski (Tr. 60-111)

Officer Trybulski has been a law enforcement officer for over ten years and at all times relevant to this proceeding has been employed by the Raleigh Police Department. In July 2014, Officer Trybulski received information from a cooperating defendant ("CD") concerning Defendant's involvement in trafficking cocaine. Officer Trybulski had knowledge from other drug investigations that Defendant was engaged in drug trafficking. Based upon the information

---

[2] At the evidentiary hearing, the government sought to admit as Government Exhibit 4 a document entitled "Community Service Work Program Case Details" documenting Ms. Evans' case manager's notes concerning Ms. Evans' "forgery" of information concerning her completion of the community service requirement of the deferred prosecution agreement. Defendant objected to the admission of this evidence, and the court took the matter under advisement. The undersigned has not considered this exhibit in the findings or recommendations set forth herein, as Ms. Evans' testimony establishes her guilt as to the offenses, as well as the fact that she falsified documentation concerning her community service. As such, any objection to the proffered exhibit is deemed moot.

4

Case 5:14-cr-00246-FL   Document 28   Filed 06/22/15   Page 4 of 12

obtained from the CD, a drug investigation was commenced. Investigators corroborated the information obtained from the CD and conducted surveillance of Defendant. Physical surveillance revealed that Defendant resided at 22 Buckhorn Lane, Clayton, North Carolina, but visited 3004 Haven Road on an almost daily basis. He usually drove a BMW from Clayton to Raleigh. When in Raleigh, he would at times switch to a Honda Accord and drive to known drug locations in southeast Raleigh. After observing a known drug dealer visiting 3004 Haven Road, officers conducted a traffic stop at which currency was seized.

On July 25, 2014, Officers Trybulski and Wilkins conducted a trash pull at 3004 Haven Road. Upon arriving at the residence at 12:30 a.m., the officers observed two trash receptacles located at the curb left of the driveway. The officers did not walk into the side yard or carport area of the home. The officers removed a few of the bags from the trash cans and took the bags to an off-site parking deck to sort through the contents. A residual amount of marijuana and mail addressed to Cheryl Evans were taken from the trash.

A second trash pull was conducted at 3004 Haven Road at 4:00 a.m. on August 1, 2014. On that occasion, the two trash receptacles were taken from the curb left of the driveway, replaced with empty trash bins and taken from the premises for sorting. A small amount of marijuana, mail addressed to Cheryl Evans and four baggies with cut corners, which officers believed to be drug paraphernalia, were seized.

Following the second trash pull, Officer Trybulski applied for and obtained a warrant to search 3004 Haven Road. When officers arrived to execute the warrant on August 1, 2014, Defendant was the only individual inside the home, though Cheryl Evans arrived home during the search. Upon executing the search warrant, officers discovered drugs, firearms and cash.

5

Case 5:14-cr-00246-FL   Document 28   Filed 06/22/15   Page 5 of 12

### C. Officer Joel Wilkins (Tr. 111-40)

Officer Wilkins is a Senior Officer with the Raleigh Police Department and has been a law enforcement officer for approximately eight years. Based upon information obtained from a CD, an investigation into Defendant's activities was commenced by the Raleigh Police Department. Surveillance was conducted at Defendant's residence and another residence.

At approximately 12:30 a.m. on July 25, 2014, Officers Wilkins and Trybulski conducted a trash pull at the residence located at 3004 Haven Road in Raleigh, North Carolina. There were two trash bins beside of the street to the left of the mailbox. The officers parked their vehicle up the street so as not to be noticed, then walked to the house and removed some bags of trash from the bins. At no point on that date did either Officer Wilkins or Officer Trybulski enter into the side yard or carport area of the residence.[3] Officers seized a small amount of marijuana and mail addressed to Cheryl Evans from the trash.

Officer Wilkins, Officer Trybulski and Sergeant Hodge conducted a second trash pull at approximately 4:30 a.m. on August 1, 2014. The trash receptacles were in the same location as on July 25, 2014. Officers removed the two trash bins and replaced them with empty bins supplied by the City of Raleigh. Among other trash, there was a lot of human waste in diapers. A small amount of marijuana, baggies with the corners ripped off and more mail addressed to Cheryl Evans were taken from the second trash pull.

Officer Wilkins participated in the search of 3004 Haven Road on August 1, 2014. Defendant was the only person at the residence when officers arrived to execute the search warrant. Officers recovered approximately 203 grams of cocaine packaged in seven bags, three to five grams of marijuana, packaging material, including plastic sandwich bags similar to those

---

[3] Officer Wilkins explained that he would not have entered that area of the yard because it would have been unlawful and unsafe to do so.

used to package cocaine, a razor blade with cocaine residue and a digital scale. Cheryl Evans was one of several individuals who arrived at the residence during the search. Officer Wilkins spoke with Cheryl Evans and she stated that she and Defendant had previously been in a relationship. She said that Defendant stayed overnight most nights until around March and that he no longer spends the night but still comes over during the day to hang out, eat or use the bathroom. She also admitted seeing Defendant with crack cocaine inside her home, describing one occasion when she saw Defendant twisting crack cocaine in a bag as he was exiting the bedroom.

Based on the evidence seized from 3004 Haven Road, as well as other information gathered during the officers' investigation, Officer Wilkins applied for and obtained a warrant to search Defendant's residence at 22 Buckhorn Road, Clayton, North Carolina.

### D. Sergeant Jason Hodge (Tr. 142-51)

Sergeant Hodge is employed by the Raleigh Police Department and supervises Officers Trybulski and Wilkins. He was involved in the investigation of Defendant and participated in the second trash pull on August 1, 2014. He and Officers Trybulski and Wilkins had gotten a City of Raleigh pickup truck and two trash bins issued by the City of Raleigh and driven to 3004 Haven Road at approximately 4:30 a.m. At the residence there were two trash receptacles located out by the street to the right of the driveway. They picked up the trash bins at the residence and replaced them with the empty trash bins. None of the officers went anywhere besides the curb area of the residence because it would be illegal to take trash from the curtilage of the home.

On August 1, 2014, Sergeant Hodge spoke with Cheryl Evans about her relationship with Defendant. Ms. Evans stated that she and Defendant had been boyfriend and girlfriend for quite

7

a while but they had recently broken up. She had expected to find him moving his belongings out of her house when she returned home that day. She stated that she did not have any cocaine in the house and if any were found, "It damn sure ain't mine."

## DISCUSSION

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures and that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Generally, a search warrant must be obtained in order for a search of the home or curtilage to be considered reasonable. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011); *see also Oliver v. United States*, 466 U.S. 170, 180 (1984) (regarding curtilage as "part of home itself for Fourth Amendment purposes"). While trash located within the curtilage is subject to Fourth Amendment protections, the Fourth Amendment does not prohibit "the warrantless search and seizure of garbage left for collection outside the curtilage of a home." *California v. Greenwood*, 486 U.S. 35, 37 (1988). By placing garbage on or at the side of a public street for collection or putting it elsewhere in an area subject to public inspection, the owner abandons any reasonable expectation of privacy in the trash. *Id.* at 40.

Defendant moves to suppress any evidence seized from 3004 Haven Road and 22 Buckhorn Lane. Defendant challenges the affidavit submitted in support of Officer Trybulski's application to search 3004 Haven Road, arguing that Officer Trybulski knowingly made a false statement or omission designed to mislead the magistrate as to the constitutionality of the trash pulls conducted on July 25, 2014, and August 1, 2014. Specifically, Defendant asserts that Officer Trybulski misrepresented the location of the trash at the time searched, claiming it had been placed on the curb in a City of Raleigh trash can when, in fact, the trash pulls were "conducted at a time long before Ms. Evans would have ever placed her trash on the street" for

8

pickup. (Df.'s Mot. & Mem. Suppression [DE #20] at 11.) Defendant maintains that, instead, the trash bins were located in the side yard area and within the curtilage of Ms. Evans' home. Defendant argues that the warrantless searches of the trash were unconstitutional and that probable cause was lacking for the search of 3004 Haven Road, thus requiring the suppression of evidence seized from that residence, as well as any evidence seized from 22 Buckhorn Lane as fruits of the illegal search.

There is a "presumption of validity" with respect to search warrant applications. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Where a defendant challenging the veracity of a warrant application makes a substantial preliminary showing that (1) an officer knowingly or recklessly made false statements in or omitted facts from an affidavit supporting the warrant; and (2) those false statements or omissions were material to the finding of probable cause, a hearing must be held at the defendant's request. *Id.* at 155-56. If at the hearing, the defendant establishes "the allegation of perjury or reckless disregard . . . by a preponderance of the evidence," and the false or omitted material having been set aside, "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

Assuming that Defendant has made a substantial preliminary showing to warrant a *Franks* hearing,[4] Defendant has not met his burden of showing by a preponderance of the evidence that Officer Trybulski deliberately or recklessly made false statements in the search warrant affidavit. The issue presented here is a factual one – whether the trash receptacles searched by Raleigh Police Officers were located within or without the curtilage of Ms. Evans'

---

[4] As noted at the evidentiary hearing, this matter was scheduled for hearing without any determination having been made as to Defendant's entitlement to a *Franks* hearing. Given the factual findings and recommendation set forth herein, the undersigned does not decide that issue.

home at 3004 Haven Road. Defendant would have the court believe that the trash bins were located in the side yard area of Ms. Evans' home and were therefore within the curtilage and not at the curb as Officer Trybulski averred in his affidavit.

Through Ms. Evans' testimony, Defendant attempted to present evidence of a pattern or practice on Ms. Evans' part of placing the trash receptacles near the street for collection on Friday mornings. Ms. Evans steadfastly denied taking her trash out on Thursday evenings, stating that she always takes it out on Friday mornings; however, her testimony in this regard was not convincing. On direct examination, Ms. Evan first stated that she takes her trash to the street around 7:50 or 8:00. (Tr. 18.) Later on direct examination, she testified that she takes it to the street around 6:30 or 7:00. (Tr. 23.) She further equivocated on cross-examination, stating:

> I usually take my garbage out between – it's between 7:00 and eight o'clock, 7:30 because I don't know if the garbageman is going to come by 7:30 in the morning, but before I leave to take my son to the bus stop at 8:30 I want to make sure that the trash is out there because sometimes the garbageman comes at 7:30. So, between that 7:30 and eight o'clock mark is when my garbage is out to the curb.

(Tr. 38-39.) When confronted with her affidavit previously submitted to the court, Ms. Evans attempted to reconcile her testimony, stating that in August 2014 she rolled her trash cans to the street between 6:15 and 6:30 a.m. but that she now takes her trash to the curb around 7:00, 7:30 or 8:00 a.m. (Tr. 39.)

Officers Trybulski and Wilkins testified that at the time of both trash pulls the bins were located near the curb and that neither of them entered the side yard or carport area of the house. Despite the witnesses being sequestered throughout the hearing, the officers' testimony concerning the trash pulls was consistent and was further corroborated by the testimony of Sergeant Hodge with regard to the second trash pull on August 1, 2014.

A number of other factors also suggest that the officers' testimony is more credible than the testimony of Ms. Evans. First, the officers have only a professional interest in the outcome of the case and do not appear to have any bias or prejudice against Defendant. Second, it is difficult to imagine that the officers would have risked their safety by placing themselves in close proximity to Ms. Evans' home during the late hours of the night in order to conduct a trash pull. Ms. Evans testified that she had a motion detector light at the carport and a Rottweiler puppy in the sunroom near where she keeps her trash bins, which would have increased the risk of the officers' detection had they removed the trash bins from the side yard area. Additionally, Ms. Evans is in a relationship with Defendant and has an interest in protecting him. Finally, Ms. Evans is a convicted felon with prior convictions for offenses involving fraud or moral turpitude, and she has admitted to making false statements to a court.

Having weighed the witnesses' testimony and carefully considered the other evidence presented, as well as the arguments of counsel, the undersigned finds as a fact that Ms. Evans' trash receptacles were located at or near the curb of a public street at the time of the trash pulls conducted by the Raleigh Police Department on July 25, 2014, and August 1, 2014, and Officer Trybulski did not knowingly or recklessly make any false statement or omission in his affidavit concerning the location of the trash receptacles at the time of the trash pulls. As a consequence, the officers did not violate the Fourth Amendment by conducting a warrantless search of the trash receptacles, and Defendant has failed to show that the warrant to search 3004 Haven Road was not supported by probable cause. Accordingly, Defendant's motion to suppress should be denied.

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #20] be DENIED.

The Clerk shall send a copy of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 22nd day of June 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge