IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CR-246-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| SHERMAN CARNELL GAY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress (DE 20). Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Kimberly A. Swank entered a memorandum and recommendation ("M&R") wherein it is recommended that the court deny the motion. Defendant objected, and the government timely responded. In this posture, the issues raised are ripe for adjudication. For the reasons set forth below, the court adopts the magistrate judge's recommendation, and denies defendant's motion to suppress.

**STATEMENT OF THE CASE**

On October 22, 2014, the government filed an indictment charging defendant with possession with intent to distribute a quantity of cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1). Ffficers with the Raleigh Police Department Career Criminal Unit discovered the cocaine and cocaine base in question during a search at 3004 Haven Road in Raleigh, North Carolina.

On February 17, 2015, defendant filed this motion to suppress, requesting to suppress all evidence against him and seeking a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Defendant argued that all such evidence was "fruit of the poisonous tree," insofar as it arose from a pair of allegedly unconstitutional searches conducted on July 25, 2014 and August 1, 2014.

Defendant argued that said searches were conducted in an unconstitutional fashion, that they formed the basis for the warrant obtaining the evidence to be suppressed, and that the officers conducting said searches intentionally deceived the magistrate who issued a warrant for a subsequent search into thinking that the initial searches were constitutional. The government responded in opposition on February 27, 2015, asking the court to deny defendant's motion without a hearing. Defendant's motion was then referred to the magistrate judge, who presided over an evidentiary hearing on April 16, 2015. At the hearing, defendant was present with counsel, and presented the testimony of Cheryl Evans ("Evans"). The government presented the testimony of Officers Mike Trybulski ("Trybulski"), Joel Wilkins ("Wilkins"), and Jason Hodge ("Hodge"). Both defendant and the government entered exhibits into evidence.

The magistrate judge entered her M&R on June 22, 2015. After considering the arguments of counsel, the testimony of the witnesses, and the other evidence presented, the magistrate judge concluded that the search was lawful and thus recommends denying the motion to suppress.

Defendant objected to the magistrate judge's recommendation on August 11, 2015, arguing that the magistrate judge erred in evaluating the credibility of Evans and resolving inconsistences in the testimony. The defendant additionally requests that the court provide a new hearing to independently evaluate the credibility of the witnesses. On August 21, 2015, the government filed a response urging the court to adopt the M&R. Defendant also submitted to the court on September 4, 2015, pro se a letter outlining further objections related to the motion to suppress, among other issues, discussed further below.

## FACTUAL BACKGROUND

On August 1, 2014, officers with the Raleigh Police Department Criminal Unit entered a residence belonging to Evans at 3004 Haven Road, Raleigh, North Carolina. The residence was entered pursuant to a search warrant issued by a Wake County magistrate. In support of the search warrant, Trybulski had submitted an affidavit attesting to information received from a cooperating defendant, surveillance, and two trash pulls. (Search Warrant Aff., Gov't Hr'g Ex. 3 at 5). In pertinent part, the affidavit states as follows:

> On 7/2/14 Officer Trybulski and Officer Wilkins received information from a cooperating defendant (CD) that Sherman Gay is trafficking in cocaine in the area of Raleigh, NC. The CD stated that Gay is buying approximately 1 to 2 kilos of cocaine a month from an unknown source in Selma, NC. The CD stated Gay resides in Clayton, NC (identified as 22 Buckhorn Lane, Clayton, NC 27527) but stores his cocaine at a "stash house" in Raleigh, NC. The CD stated that Gay is currently storing his cocaine at Cheryl Evans house. Cheryl Evans resides at 3004 Haven Rd Raleigh, NC 27610. While conducting surveillance Gay has been seen coming and going from 3004 Haven Rd Raleigh, NC on numerous occasions.
> On 7/25/14 Officer Trybulski and Officer Wilkins conducted a trash pull at 3004 Haven Rd Raleigh, NC. The trash was placed on the curb in a City of Raleigh trash can on the regular scheduled pick up date. Officers located a marijuana roach and mail addressed to Cheryl Evans at 3004 Haven Rd Raleigh, NC.
> On 8/1/14 Officer Trybulski, Officer Wilkins, and Sgt. Hodge conducted a trash pull at 3004 Haven Rd Raleigh, NC. The trash was placed on the curb in a City of Raleigh trash can on the regular scheduled pick up date. Officers located a marijuana roach, four plastic baggies with cut corners, and mail addressed to Cheryl Evans at 3004 Haven Rd Raleigh, NC.

(Id.).

At the residence, on August 1, 2014, officers found a variety of items, including two pistols, 203 grams of cocaine, mail addressed to Sherman Gay, eleven grams of marijuana, 2 oxycodone pills, digital scales, plastic bags, rubber bands, one razor blade with cocaine residue, five cell phones and $299 in United States currency. (Def. Hr'g Ex. 5) The officers subsequently obtained and

3

executed a search warrant for defendant's home in Clayton, North Carolina, where they found digital

scales with drug residue on them, a Mercedes Benz 500C, and documents in defendant's name.

At the evidentiary hearing, defendant presented the testimony of Evans, who testified that

she was in the habit of taking her trash out from her side yard to the curb on Friday morning at some

point after 6:30 a.m. The government presented the testimony of Trybulski, Wilkins, and Hodge,

who testified that the trash was already out on the curb at 12:30 a.m. on July 28, 2014, and 4:00 a.m.

on August 1, 2014, and they had not needed to enter the side yard. Defendant and government also

offered a number of exhibits that were admitted into evidence. (See Hr'g Ex. List [DE 26].).

Witnesses were sequestered throughout the hearing.

Where defendant has filed no objections to the magistrate judge's summary of the witness

transcripts in the M&R, so the court adopts the same and recites them below:

A.      Cheryl Evans (Tr. 7-53)

Cheryl Evans is Defendant's girlfriend and resides at 3004 Haven Road in Raleigh with

her two sons, ages seven and fourteen. Ms. Evans' fourteen-year-old son has cerebral palsy and

requires round-the-clock care. Ms. Evans receives assistance from two home-care aides.

Defendant and Ms. Evans began dating around December 2013. At some point, the two began

having "disagreements." Defendant stopped staying overnight at Ms. Evans' home but continued

to come to the house on a daily basis. In or around July 2014, Ms. Evans asked Defendant to

remove his belongings from her home, which he was supposed to have done on August 1, 2014.

Ms. Evans has two trash receptacles issued by the City of Raleigh, which she uses to

discard of household refuse. The trash receptacles are normally kept in the side yard area of the

residence, near the carport and approximately three or four feet from the back door to the

4

sunroom. Due to her son's condition, the trash receptacles contain a large quantity of soiled diapers and empty Pediasure® cans. Ms. Evans' home is on the City of Raleigh's Friday trash route, and Ms. Evans places the trash receptacles on the grassy area near the curb of her street prior to the designated pickup time on Friday.

As a result of the investigation and search of 3004 Haven Road, Ms. Evans was charged and, in February 2015, adjudicated guilty on state charges of maintaining a dwelling for the use, manufacture or distribution of controlled substances. On the same date, she pled guilty to illegal possession or use of food stamps, two counts of obtaining property by false pretenses and conspiracy to obtain property by false pretenses. Ms. Evans entered into a deferred prosecution agreement under the state's felony diversion program but was subsequently terminated from the program after submitting falsified records concerning her community service requirement.

B.     Officer Mike Trybulski (Tr. 60-111)

Officer Trybulski has been a law enforcement officer for over ten years and at all times relevant to this proceeding has been employed by the Raleigh Police Department. In July 2014, Officer Trybulski received information from a cooperating defendant ("CD") concerning Defendant's involvement in trafficking cocaine. Officer Trybulski had knowledge from other drug investigations that Defendant was engaged in drug trafficking. Based upon the information obtained from the CD, a drug investigation was commenced. Investigators corroborated the information obtained from the CD and conducted surveillance of Defendant. Physical surveillance revealed that Defendant resided at 22 Buckhorn Lane, Clayton, North Carolina, but visited 3004 Haven Road on an almost daily basis. He usually drove a BMW from Clayton to Raleigh. When in Raleigh, he would at times switch to a Honda Accord and drive to known drug

5

locations in southeast Raleigh. After observing a known drug dealer visiting 3004 Haven Road, officers conducted a traffic stop at which currency was seized.

On July 25, 2014, Officers Trybulski and Wilkins conducted a trash pull at 3004 Haven Road. Upon arriving at the residence at 12:30 a.m., the officers observed two trash receptacles located at the curb left of the driveway. The officers did not walk into the side yard or carport area of the home. The officers removed a few of the bags from the trash cans and took the bags to an off-site parking deck to sort through the contents. A residual amount of marijuana and mail addressed to Cheryl Evans were taken from the trash.

A second trash pull was conducted at 3004 Haven Road at 4:00 a.m. on August 1, 2014. On that occasion, the two trash receptacles were taken from the curb left of the driveway, replaced with empty trash bins and taken from the premises for sorting. A small amount of marijuana, mail addressed to Cheryl Evans and four baggies with cut corners, which officers believed to be drug paraphernalia, were seized.

Following the second trash pull, Officer Trybulski applied for and obtained a warrant to search 3004 Haven Road. When officers arrived to execute the warrant on August 1, 2014, Defendant was the only individual inside the home, though Cheryl Evans arrived home during the search. Upon executing the search warrant, officers discovered drugs, firearms and cash.

C.      Officer Joel Wilkins (Tr. 111-40)

Officer Wilkins is a Senior Officer with the Raleigh Police Department and has been a law enforcement officer for approximately eight years. Based upon information obtained from a CD, an investigation into Defendant's activities was commenced by the Raleigh Police Department. Surveillance was conducted at Defendant's residence and another residence.

6

At approximately 12:30 a.m. on July 25, 2014, Officers Wilkins and Trybulski conducted a trash pull at the residence located at 3004 Haven Road in Raleigh, North Carolina. There were two trash bins beside of the street to the left of the mailbox. The officers parked their vehicle up the street so as not to be noticed, then walked to the house and removed some bags of trash from the bins. At no point on that date did either Officer Wilkins or Officer Trybulski enter into the side yard or carport area of the residence. Officers seized a small amount of marijuana and mail addressed to Cheryl Evans from the trash.

Officer Wilkins, Officer Trybulski and Sergeant Hodge conducted a second trash pull at approximately 4:30 a.m. on August 1, 2014. The trash receptacles were in the same location as on July 25, 2014. Officers removed the two trash bins and replaced them with empty bins supplied by the City of Raleigh. Among other trash, there was a lot of human waste in diapers. A small amount of marijuana, baggies with the corners ripped off and more mail addressed to Cheryl Evans were taken from the second trash pull.

Officer Wilkins participated in the search of 3004 Haven Road on August 1, 2014. Defendant was the only person at the residence when officers arrived to execute the search warrant. Officers recovered approximately 203 grams of cocaine packaged in seven bags, three to five grams of marijuana, packaging material, including plastic sandwich bags similar to those used to package cocaine, a razor blade with cocaine residue and a digital scale. Cheryl Evans was one of several individuals who arrived at the residence during the search. Officer Wilkins spoke with Cheryl Evans and she stated that she and Defendant had previously been in a relationship. She said that Defendant stayed overnight most nights until around March and that he no longer spends the night but still comes over during the day to hang out, eat or use the

7

bathroom. She also admitted seeing Defendant with crack cocaine inside her home, describing one occasion when she saw Defendant twisting crack cocaine in a bag as he was exiting the bedroom.

Based on the evidence seized from 3004 Haven Road, as well as other information gathered during the officers' investigation, Officer Wilkins applied for and obtained a warrant to search Defendant's residence at 22 Buckhorn Road, Clayton, North Carolina.

D.    Sergeant Jason Hodge (Tr. 142-51)

Sergeant Hodge is employed by the Raleigh Police Department and supervises Officers Trybulski and Wilkins. He was involved in the investigation of Defendant and participated in the second trash pull on August 1, 2014. He and Officers Trybulski and Wilkins had gotten a City of Raleigh pickup truck and two trash bins issued by the City of Raleigh and driven to 3004 Haven Road at approximately 4:30 a.m. At the residence there were two trash receptacles located out by the street to the right of the driveway. They picked up the trash bins at the residence and replaced them with the empty trash bins. None of the officers went anywhere besides the curb area of the residence because it would be illegal to take trash from the curtilage of the home.

On August 1, 2014, Sergeant Hodge spoke with Cheryl Evans about her relationship with Defendant. Ms. Evans stated that she and Defendant had been boyfriend and girlfriend for quite a while but they had recently broken up. She had expected to find him moving his belongings out of her house when she returned home that day. She stated that she did not have any cocaine in the house and if any were found, "It damn sure ain't mine."

8

A.    Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed.  28 U.S.C. § 636(b).  The court does not perform a de novo review of those portions to which a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the reasoning and recommendation of the magistrate judge.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C).

B.    Analysis

Defendant requests that the court conduct a de novo review of the magistrate judge's credibility analysis and either:  (1) Reject the M&R and grant defendant's motion to suppress or (2) Hold a new hearing to independently assess the credibility of witnesses whose testimony dictates the outcome of the motion.

1.    Credibility Analysis

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."  Franks v. Delaware, 438 U.S. 154, 171 (1978).  Moreover, a defendant must meet an exacting standard to overcome this presumption.  In particular, a defendant must first "[make]

a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Id. at 154. Second, a defendant must demonstrate that "the allegedly false statement is necessary to the finding of probable cause." Id. at 154.

The magistrate court held that Defendant had not met the burden of showing by a preponderance of evidence that Trybulski deliberately or recklessly made false statements in the search warrant affidavit. The factual issue in dispute is whether the trash receptacles searched by Trybulski and Wilkins were located on the curb, as stated in the affidavit and as testified by Trybulski and Wilkins, or within the curtilage of Evans' home, as testified by Evans. The magistrate judge found that the testimony of Wilkins and Trybulski, who testified that the receptacles were on the curb, was more credible than the testimony of Evans, who testified that the receptacles were in the curtilage of her house. See M&R at 11. Defendant argues that the while Evans provided inconsistent testimony as to the specific times the trash was taken out, Evans was consistent in stating that the trash was taken out on Friday morning, and that the magistrate judge erred in failing to take this into consideration.

As noted above, the district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). A "de novo determination is not necessarily the same as a de novo hearing . . . even as to those findings based on the magistrate's judgment as to the credibility of the witnesses before him." Proctor v. State Government of North Carolina, 830 F.2d 514, 518 n.2 (4th Cir. 1987). Section 636(b) "grants the [district] judge the broad discretion to accept, reject, or modify the magistrate's proposed findings" United States v. Raddatz, 447 U.S. 667 at 680 (1980)., and "it is unlikely that a district judge would reject a magistrate's

10

proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal." Id. at 681 n.7.

The court has conducted a thorough de novo review of the record including defendant's motion to suppress, the transcripts of the hearings before the magistrate judge, the M&R, and defendant's objections thereto, as well as the law governing the matters at issue here. Having done so, the court finds the testimony by Trybulski, Wilkins and Hodge to be credible.

There are a number of factors supporting this finding of credibility. First, Trybulski and Wilkins provided testimony that was consistent despite sequestration. This testimony not only matched with the affidavit produced by Trybulski (Def. Hr'g Ex. 3), but the testimony regarding the second trash pull was corroborated by the testimony of Hodge, who was also sequestered. Over the course of that testimony, Trybulski and Hodge stated that for the second trash pull they obtained the trash receptacles by swapping them with empty receptacles, before carrying the full receptacles to a parking lot to search them. (Tr. 71, 144). Although none of the officers testified or presented any other form of evidence that they had electronically recorded the time or location of the trash when they performed the pulls, they testified that it was not common practice to do so. (Tr. 135).

Defendant's argument is reliant on the testimony of Evans. As defendant states, Evans provided inconsistent times for when she would take her trash out to the curb. The transcript shows that Evans alleged that she took her trash out to the curb on a variety of times. In her affidavit, she stated that she brought her trash cans to the street between 6:15 and 6:30 a.m. (Tr. 40). On direct examination, she stated both that she took her trash to the street at 7:50 or 8:00 a.m., (Tr. 18) and then at 6:30 or 7:00 a.m. (Tr. 23). On cross-examination, Evans further provided the broader range of usually between 7:00 and 8:00 am. When confronted with the disparities between her affidavit

11

and the times given, Evans stated that she had previously taken the trash out when getting up to care for her new puppy at around 6:00 a.m., but as this was no longer necessary she did so before taking her youngest son to the bus stop, (Tr. 39) an event that occurred by 8:30. (Tr. 18).

Evans' testimony is also inconsistent with respect to when the trash pick-up occurred, and some of the times provided for pick up are earlier than the times at which Evans testified she routinely dropped off the trash. The times given ranged from 7:30, 7:30 to 8:00, 7:45 to 8:00, 8:00 to 8:30, and once as early as 7:02. (Tr. 39). These times were sometimes given within the space of a few answers of one another, and were not only inconsistent with one another, but with several of the times Evans testified she rolled the trash to the curb, as the 7:50 to 8:00 time frame for drop-off provided by Evans (Tr. 18) would have occurred after most of the times provided for pickup. Evans attempted to reconcile the timing at which she testified the trash pick up occurred with her later drop-offs by stating that "they've been coming later." (Tr. 40). However, in the affidavit, Evans stated that the City of Raleigh routinely picked up her trash between 7:45 and 8:00 a.m. in August 2014, consistent with the later times provided. (Tr. 40). When pressed on these inconsistencies, Evans stated that she would listen for the truck, (Tr. 40) although she had previously said that it took her 10-15 minutes to pack her trash and get both containers out to the curb. (Tr. 18). The city of Raleigh requires that all trash receptacles be curbside by 7:00 a.m. (Def. Hr'g Ex. 3).

While defendant was correct in stating that Evans consistently testified that she took the trash out in the morning, Evans nevertheless provided inconsistent testimony. These inconsistencies still weigh against Evans' credibility, even if the testimony does not explicitly contradict the claim that the testimony is presented to support.

12

There are other factors weighing against Evans' credibility. First, as noted by the magistrate court, Evans is a convicted felon with prior convictions for offenses involving fraud or moral turpitude, and she admitted to making false statements to a court. (Gov't Hr'g Ex. 4). Moreover, while Evans testified that she would pack down her trash prior to rolling it to the curb, Trybulski and Hodge testified that for the second trash pull, they swapped Evans' filled trash receptacles for empty receptacles provided by the City of Raleigh. (Tr. 71) This should have been noticed by somebody who routinely packed and transported her trash the following morning, whereas Evans never testified that she noticed empty cans on Aug. 1. Moreover, while defendant and Evans may have been going through a disagreement at the time of the trash pull, at the time of the hearing, Evans testified that they had reconciled and were in a relationship, (Tr. 24) suggesting a bias on the part of Evans. Finally, Evans has testified that there was both a puppy or puppies and a motion detector in the vicinity of the side yard where she testified the receptacles were stored. However, Evans has not testified that she was not alerted to the presence of police officers in her side yard, despite the puppy staying within a few yards of the trash receptacles. (Tr. 39, 43).

Defendant also argues that Evans' testimony appeared less credible due to her nerves and lack of courtroom experience compared to the three officers. While it is possible that on subsequent hearings Evans may be more composed, this does not indicate that the magistrate judge made any error in failing to find Evans' testimony credible during the evidentiary hearing. For the aforementioned reasons, the court finds that Evans receptacles were not located within the curtilage of Evans home at the time of the trash pulls on July 25, 2014 and August 1, 2014. Therefore, defendant has failed to meet the burden of a "substantial preliminary showing that a false statement" was made in the warrant affidavit. Franks 438 U.S. at 171. As such, defendant has failed to meet

13

his burden of showing by a preponderance of the evidence that the warrant to search 3004 Haven Road was not supported by probable cause and was therefore fruit of the poisonous tree. Accordingly, defendant's motion to suppress must be denied.

        2.        New Hearing

    Defendant also argues for a new hearing in which the court may reach its own findings regarding the disputed credibility analysis of the magistrate judge. Under <u>Raddatz</u>, a new hearing lies within the discretion for the court, though it is not mandatory. <u>See</u> 447 U.S. at 680.

    Defendant's objection notes that the Fifth Circuit has taken the position that "[i]f the [court] doubts the credibility determination of the magistrate, only by hearing the testimony [itself] does [the court] have an adequate basis on which to base [its] decision." <u>Louis v. Blackburn</u>, 630 F.2d 1105, 1109-1110 (5th Cir. 1980). However, in that case and others decided in the Second, Third, Fifth, Ninth and Eleventh Circuits, this requirement has only appeared where the district court outright "rejects the credibility finding of a magistrate judge" and comes to a different conclusion. <u>United States v. Ridgway</u>, 300 F.3d 1153, 1157 (9th Cir.2002); <u>See</u> <u>United States v. Cofield</u>, 272 F.3d 1303, 1305–06 (11th Cir.2001); <u>Cullen v. United States</u>, 194 F.3d 401, 407 (2d Cir.1999); and <u>Hill v. Beyer</u>, 62 F.3d 474, 482 (3d Cir.1995).

    Moreover, such a requirement has not been adopted by the Fourth Circuit, let alone one requiring a new hearing where there is an asserted reason to doubt the credibility determinations made by the magistrate judge.

    Therefore, there is no requirement to hold a new hearing while conducting a de novo review of credibility, and the court declines to do so in its discretion.

14

3.    Pro Se Letter

Also before the court is a pro se letter received from defendant regarding his motion to suppress, which the court construes as a supplement to defendant's objections. The clerk is directed to file this letter as a pro se supplement to defendant's objections (thus by filing ensuring service upon counsel for defendant and the government). The court has reviewed the arguments raised by defendant in his pro se supplement to the objections to the motion to suppress, and finds them to be without merit. Defendant raises several other issues regarding interactions with his attorney, pre-trial motions, and discovery obligations in his pro se letter. Defendant's counsel is directed to confer with defendant and the government regarding the issues raised by defendant in his pro se letter.

Further, defendant is cautioned that, where represented in this case by counsel, filings must be made by counsel and future pro se motions by defendant summarily may be denied. See United States v. Singleton, 107 F.3d 1091, 1103 (4th Cir. 1997) (upholding discretion of district court to restrict hybrid representation); Cf. Faretta v. California, 422 U.S. 806, 835 (1975) (noting that a criminal defendant who chooses to proceed pro se may be allowed to do so only if he knowingly and intelligently waives the benefits of counsel).

**CONCLUSION**

Upon de novo review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions to which no objection has been made, the court ADOPTS as its own the findings and recommendations of the magistrate judge (DE 28). The clerk is DIRECTED to file defendant's pro se letter received September 4, 2015, as a pro se supplement to defendant's objections regarding the M&R. For the reasons given above, defendant's motion to

15

suppress (DE 20) is DENIED. Defendant's counsel is DIRECTED to confer with defendant and the government regarding the issues raised by defendant in his pro se letter. Defendant is CAUTIONED that, where represented in this case by counsel, filings must be made by counsel and future pro se motions by defendant summarily may be denied.

      SO ORDERED, this the 4th day of September, 2015.


_____
LOUISE W. FLANAGAN
United States District Judge